FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRAVIS P.,[1] <br>                Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>               Defendant. | No. 1:19-cv-03072-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 24, 2014, Plaintiff applied both for Title II disability

insurance benefits and Title XVI supplemental security income benefits alleging a

disability onset date of December 16, 2013. Tr. 245-53; Tr. 254-59.[3] On the

current application, Plaintiff requested a closed period through September 12,

_____

[3] Plaintiff previously applied for benefits; that application resulted in a dismissal on

January 15, 2013. Tr. 98.

ORDER - 6

2016, when he returned to work at the substantial gainful activity level. Tr. 670. The applications were denied initially and on reconsideration. Tr. 165-71; Tr. 174-79. Plaintiff appeared before an administrative law judge (ALJ) on February 10, 2017. Tr. 61-94. On April 11, 2018, the ALJ denied Plaintiff's claim. Tr. 12-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2013, did not engage in substantial gainful activity from December 16, 2013 through September 11, 2016. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthrosis/osteoarthritis/bursitis of the right hip, status post replacement surgery; obesity; affective disorder; anxiety disorder; and psychotic disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18-20. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> At least once between breaks [Plaintiff] can change their position, either by changing it for a period of time because they are going to do other job duties, or change it to stand and stretch for a few minutes if they are seated; occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to extreme cold and to excessive vibration; and should avoid moderate exposure to workplace hazards such as working with dangerous machinery and should not work at unprotected heights. [Plaintiff] can perform simple routine tasks in a routine work environment with simple work related decisions and

have superficial interaction with co-workers and the public. Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as toy stuffer, assembler and document preparer. Tr. 26. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 16, 2013, through the date of the decision. *Id.*

On February 19, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence; and

2. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the opinions of Dr. Strong, Dr. Farley, and Dr. Cline. ECF No. 14 at 10-15. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Strong

Dr. Strong, a treating provider, provided an opinion regarding Plaintiff's functioning in November 2014. Tr. 779, 792-96. In the treatment note, Dr. Strong noted, "I do not think he will be capable of doing anything other than sedentary work and I do not believe that he is so severely limited that he is unable to do sedentary work in the future." Tr. 779. In the functional evaluation signed the same day, Dr. Strong opined that Plaintiff could perform sedentary work. Tr. 793.

The ALJ gave Dr. Strong's opinion "significant weight." Tr. 23. As Dr. Strong's opinion is contradicted, the ALJ is required to give specific and legitimate reasons for rejecting any portion of Dr. Strong's opinion. *See Bayliss*, 427 F.3d at 1216.

First, Plaintiff contends that Dr. Strong's opinions should be read as indicating that Plaintiff would be able to perform sedentary work in the future, rather than at that present time. ECF No. 14 at 9 (citing Tr. 779). The Court notes that the question posed to Dr. Strong read as follows: "In your professional medical opinion, what work level is the client capable of performing in a regular predictable manner despite their impairment", to which he checked "sedentary work." Tr. 793. Here, the ALJ reasonably interpreted the functional assessment and treatment note as indicating Plaintiff was then capable of sedentary work.

Next, Plaintiff contends Dr. Strong opined that Plaintiff was unable to perform various work-related activities and the ALJ erred by not including such limitations in the RFC. ECF No. 14 at 9 (citing Tr. 794). In the functional assessment form, Dr. Strong opined Plaintiff's left hip condition is "severe," which the form defined as causing an "inability to perform one or more basic work-related activities." Tr. 794. The form asks for the affected work activities to be listed, but there is no indication that Dr. Strong was opining Plaintiff is unable to perform all of the activities- only that they were affected by Plaintiff's hip impairment.[4] *Id.* He opined Plaintiff's hip impacted his ability to sit, stand, walk,

_____

[4] The form instructs the source to estimate the severity of the diagnosis (not the affected work activity) in column 3.

ORDER - 11

lift, carry, push, pull, stoop and crouch.  *Id*.  Plaintiff's proposed interpretation of the evidence is inconsistent with Dr. Strong's opinion within the same document that Plaintiff can sustain sedentary work.  Tr. 793.  Further, Dr. Strong's opinion does not indicate which of the activities cannot be performed, or how any specific activity is affected.  *See* Tr. 794.

To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).  Here, the ALJ's interpretation of the evidence is reasonable and thus must be affirmed.  While Plaintiff offers a differing interpretation of the opinion, given this interpretation, the ALJ did not reject any portion of Dr. Strong's opinion.

### 2.  Dr. Farley

Dr. Farley, a treating provider, completed paperwork for Plaintiff to obtain a disabled parking permit in May 2014.  Tr. 761.  Dr. Farley opined Plaintiff qualifies for a permanent permit, because he is "severely limited in ability to walk due to arthritic, neurological, or orthopedic condition."  *Id.*  Dr. Farley opined this

limitation was permanent. *Id*. The ALJ found Dr. Farley's opinion did not support a finding Plaintiff was more limited than accounted for in the RFC. Tr. 23. As Dr. Farley's opinion is contradicted, the ALJ is required to give specific and legitimate reasons for rejecting any portion of Dr. Farley's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found the opinion was only a check box form with no explanation for the limitation. Tr. 23. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). For this reason, individual medical opinions are preferred over check-box reports. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, if treatment notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").

Dr. Farley's opinion consists only of a checked box, with no explanation as to the cause of Plaintiff's limitation, the extent of the limitation nor why the limitation is permanent. Tr. 761. There are no treatment notes accompanying the assessment which provide an explanation of this opinion beyond Plaintiff's self-

report.  *See* Tr. 787, 789.  Given the lack of explanation, this was a specific and legitimate reason to reject the opinion.

Second, the ALJ found the opinion that the limitation was permanent was inconsistent with the record.  Tr. 23.  An ALJ may reject limitations "unsupported by the record as a whole."  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).  The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

Here, the ALJ found Dr. Farley's opinion inconsistent with the record, including Plaintiff's testimony that he could stand and walk without limitation following his hip surgery.  Tr. 23.  Additionally, the ALJ incorporated his earlier discussion of Plaintiff's records being inconsistent with his alleged pain and limitations, and the ALJ found the opinion inconsistent with Plaintiff's report that he did not previously use his California disabled parking permit "all the time."  *Id.*, Tr. 787.  The ALJ's earlier discussion of the record included references to Plaintiff's lack of orthopedic care until mid-2015, Tr. 22 (citing Tr. 830-32), no record of an abnormal gait until April 2015, Tr. 22 (citing Tr. 805), and Plaintiff's

return to work in September 2016, five months after his surgery, Tr. 22 (citing Tr. 968).

While a different interpretation of the medical evidence could be made, the ALJ's interpretation of the longitudinal record is a rational interpretation supported by substantial evidence. *See Batson,* 359 F.3d at 1198 (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding). This was a legitimate and specific reason to discount Dr. Farley's opinion.

Further, any error in the analysis of Dr. Farley's opinion would be harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The only box Dr. Farley affirmatively checked was the box indicating Plaintiff was "severely limited in ability to walk." Tr. 761. Plaintiff argues only that the ALJ improperly considered the finding that Plaintiff is severely limited in his ability to walk; however, the ALJ already limited Plaintiff to a sedentary RFC with additional limitations. Tr. 20.

*3. Dr. Cline*

Dr. Cline, an examining source, provided an opinion regarding Plaintiff's functioning in November 2014. Tr. 797-801. Dr. Cline opined that Plaintiff had marked limitations in his ability to complete a full work schedule and maintain appropriate behavior at work, and moderate limitations in understanding,

remembering and persisting in tasks by following detailed instructions; performing

activities within a schedule without special supervision; being aware of normal

hazards and taking appropriate precautions; communicating and performing work

effectively; and asking simple questions or requesting assistance. *Id.* Dr. Cline

opined Plaintiff's limitations would last six to 12 months. Tr. 800. The ALJ gave

Dr. Cline's opinion minimal weight. Tr. 24. As Dr. Cline's opinion is

contradicted, the ALJ is required to give specific and legitimate reasons for

rejecting any portion of it. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Cline did not provide an explanation for her

opinion. Tr. 24. The Social Security regulations "give more weight to opinions

that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he

ALJ need not accept the opinion of any physician, including a treating physician, if

that opinion is brief, conclusory and inadequately supported by clinical findings."

*Bray*, 554 at 1228. Here, the ALJ reasoned Dr. Cline did not link any of the mental

status exam (MSE) findings to her opinions and did not provide any other

explanation for the opinion. Tr. 24. Dr. Cline indicated Plaintiff had moderate

limitations due to depression/mood instability, marked limitations due to psychotic

symptoms, and moderate limitations due to his sleep disturbance. Tr. 798. To

support these findings, Dr. Cline only cited to Plaintiff's own reports of his

symptoms. *Id.*

ORDER - 16

During the MSE, Dr. Cline observed Plaintiff's speech was normal though he was terse, short and irritable, with poor eye contact and difficult to engage. Tr. 800. Plaintiff reported a depressed mood and he had a flat affect, though he had normal thoughts, orientation, memory and concentration. Tr. 801. Plaintiff endorsed hearing voices and paranoia and had impaired insight and judgment, while his fund of knowledge was fair. *Id.* Dr. Cline opined Plaintiff needed to continue mental health treatment and stated, "if he is able to successfully resume school, he should be able to work, at least part time." Tr. 800.

Dr. Cline opined Plaintiff has moderate limitations in his ability to understand, remember and persist in tasks by following detailed instructions. Tr. 799. However, on exam, Plaintiff had normal memory and concentration. Tr. 801. The other limitations, such as being aware of hazards and taking appropriate precautions, correlate more clearly to abnormal MSE findings such as the abnormal insight/judgment. *See* Tr. 800-01. However, any error in this reasoning would be harmless as the ALJ provided other specific and legitimate reasons to reject the opinion. *See Carmickle*, 533 F.3d at 1162-63.

Second, the ALJ found the opinion was rendered based on a one-time exam at a time when Plaintiff had a gap in treatment. Tr. 24. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1052 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The number of visits a claimant had with a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c).

The ALJ reasoned Plaintiff's performance at Dr. Cline's exam was not consistent with the overall record, considering the record demonstrated Plaintiff had improvement with treatment, and Dr. Cline saw Plaintiff during a gap in treatment. Tr. 24 (citing Tr. 810, 1052). By September 2015, Plaintiff's primary care physician found Plaintiff's bipolar disorder was not "limiting." Tr. 24. (citing Tr. 1053). Dr. Petaja, a reviewing doctor, also opined Plaintiff's psychiatric symptoms were "mostly stable when he has medication." Tr. 24 (citing Tr. 850).

Plaintiff argues the ALJ improperly found Dr. Cline's opinion was not indicative of Plaintiff's functioning throughout the record. ECF No. 14 at 11. Plaintiff cites to evidence demonstrating Plaintiff's mental health symptoms, however much of the evidence pre-dates the alleged onset date, Tr. 690, 730, 740, 749, 909, or is evidence from other time periods when Plaintiff was not taking all of his prescribed medications, Tr. 749, 766, 768, 770, 810-11.

At the November 2014 MSE, Plaintiff reported he was "just getting back into attending" therapy regularly, and stated he was attending at least twice per month. Tr. 798. The week prior to the MSE, Plaintiff reported he had run out of

psychiatric medications and was not on them. Tr. 778. Two months prior, he also reported having not been on psychiatric medications. Tr. 781. One month prior to the MSE, Plaintiff was seen for a mental health evaluation and one appointment, but the appointment ended early because Plaintiff fell asleep during the appointment. Tr. 770. Plaintiff was asked to reschedule but did not. *Id.*

While Plaintiff cites to a third-party letter, and two visits during the relevant adjudicative period in which he was on medication and had some symptoms, ECF No. 14 at 11 (citing Tr. 817-18, 823), this does not undermine the ALJ's conclusion.

The month after Dr. Cline's evaluation, Plaintiff reported he was on medication for his physical symptoms and it was also helping with improvement in his mood and sleep. Tr. 827. Plaintiff re-initiated mental health treatment and reported he was applying for Social Security due to his chronic pain, though he had some fatigue and poor motivation. Tr. 810. He also reported he had been off mental health medications for six months. Tr. 808. The following month, Plaintiff reported he was caring for his elderly mother and "working a lot." Tr. 815. He reported he was doing well and not needing any medication changes. Tr. 825. He began attending weekly NA/AA meetings, and running a group. Tr. 821.

Though Plaintiff reports being treated for his bipolar disorder since 1991, Tr. 817, Plaintiff was able to maintain full-time employment, despite his condition,

ORDER - 19

until his legal issues began, Tr. 306, 615.  After his release, Plaintiff returned to working at SGA, until his work ended in 2013 due to being laid off.  Tr. 291. Plaintiff filed for unemployment benefits in early 2014, which required he "be able to work, be available for work, and actively seeking work each week to be eligible."  Tr. 296.  He requested funding to return to school to obtain a degree in social work, which was approved, and he began school in March 2014.  Tr. 290-92, 311.  In April 2014, Plaintiff reported he was attending classes from 9:30a.m. to 1:00p.m. and reported he was still job hunting and willing to work while attending classes.  Tr. 297, 307-08.  Plaintiff reported spending six to eight hours per day in class, studying or otherwise preparing for class.  Tr. 312.

Plaintiff noted he was "basically unemployable" in his prior profession due to his felony conviction and status as a parolee.  Tr. 308.  He then reported working in early 2015, Tr. 815, which is consistent with a new hire inquiry showing he was hired in January 2015, Tr. 271.  Plaintiff resumed working at the SGA level in September 2016.  Tr. 670.

The overall record is consistent with the ALJ's finding that Plaintiff appeared for Dr. Cline's exam during a gap in treatment, and his performance when treated is inconsistent with his performance at Dr. Cline's exam.  The ALJ provided specific and legitimate reasons, supported by substantial evidence, to reject Dr. Cline's opinion.  Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 12-17. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear

and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 21.

First, the ALJ found Plaintiff's statements inconsistent with the longitudinal record. *Id.* Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

Here, the ALJ reasoned the longitudinal evidence was not consistent with Plaintiff's reported increasing pain and limitations due to his hip. Tr. 21. The ALJ noted that while Plaintiff reported worsening of his symptoms in 2008 and an inability work due to his hip in 2013, he did not present to an orthopedist until April 2015. Tr. 22 (citing Tr. 830-32). There is no documentation of Plaintiff having an impaired gait until April 2015, Tr. 22 (citing Tr. 805), and he first obtained imaging of his hip and saw an orthopedic surgeon in 2015, Tr. 22 (citing Tr. 831, 1095). Additionally, Plaintiff remained on the same pain medication regimen until the end 2014, when gabapentin was added. Tr. 22 (citing Tr. 1016). He underwent hip replacement surgery in April 2016 and returned to work by September 2016. Tr. 72, 968.

Plaintiff argues that he received adequate treatment for his hip and the records demonstrate his hip consistently caused limitations, and thus this was an improper reason to reject his statements. ECF No. 14 at 13. Plaintiff cites to

evidence of hip discomfort with range of motion, Tr. 785, and a note from Plaintiff's provider that Plaintiff's hip impairment significantly impairs his mobility, justifying a handicap parking placard, Tr. 789. However, Plaintiff also reported he does not always need the parking placard, as he is able to walk, but in the afternoons the pain can worsen significantly and "at times" he needs to use the placard. Tr. 787. While Dr. Strong found Plaintiff had limitations due to his hip impairment, he opined Plaintiff was still capable of sedentary work. Tr. 794. Plaintiff's hip imaging showed abnormalities, Tr. 779, eventually requiring a hip replacement, but Plaintiff's analysis of the records does not demonstrate the ALJ's analysis was erroneous. There is substantial evidence supporting the ALJ's conclusion that the longitudinal record is inconsistent with Plaintiff's reports that his hip was a disabling impairment.

Second, the ALJ noted that Plaintiff failed to seek or comply with treatment. Tr. 22. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence

suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ found Plaintiff's treatment record was inconsistent with his allegations. Tr. 21-23. While Plaintiff alleged worsening hip pain beginning in 2008/2009 and an inability to work in 2013, and reported he was approved for a hip replacement at some point, he did not re-engage with an orthopedist until mid-2015 and did not see an orthopedic surgeon until December 2015. Tr. 22 (citing Tr. 1095). Plaintiff argues his loss of insurance caused the lack of treatment, and that he did not see an orthopedist until April 2015 because he was waiting to establish with a primary care physician (PCP) and receive a referral. ECF No. 14 at 13; ECF No. 16 at 2. However, Plaintiff does not offer an explanation as to why he did not pursue the reported previously authorized hip replacement, nor why his insurance was reinstated by September 2014, yet he did not establish with a new PCP until April 2015. Tr. 802. This was a clear and convincing reason to discredit Plaintiff's symptom complaints.

Regarding his mental health treatment, Plaintiff reported missing appointments for several reasons, including because he was not wanting to engage in therapy, and on one occasion, because he took his son to California, and he did

not take all of his prescribed medications on multiple occasions.  Tr. 22 (citing Tr. 749-50, 759-60, 766, 1052).  The ALJ also observed substance use may have impacted Plaintiff's compliance with treatment.  Tr. 23 (citing Tr. 690, 745, 934, 936, 938).  The ALJ reasonably interpreted Plaintiff's failure to seek treatment as inconsistent with Plaintiff's symptom complaints.

Third, the ALJ found that Plaintiff's statements regarding his hip pain were inconsistent with his work history, that Plaintiff made inconsistent statements regarding his work history, and the record demonstrated that Plaintiff ceased working for reasons unrelated to his impairments.  Tr. 22.  A claimant's prior work record and efforts to work are relevant considerations when assessing the consistency of a claimant's statements.  *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 404.1529 (work record can be considered in assessing credibility); 20 C.F.R. § 416.929 (same).  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears

less than candid.").  The ALJ also may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the claimant's symptom reports.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Here, Plaintiff alleged his hip impairment began worsening in 2008/2009 but he continued working as a mental health worker until 2010, when he reported the facilities were shutting down.  Tr. 22, 768.  Plaintiff then owned a company until he was charged with a felony and was incarcerated.  Tr. 22 (citing Tr. 754).  After his release, Plaintiff again worked at SGA.  Tr. 22, 268, 615.  Plaintiff alleged he quit because of his pain, but the record indicates he was let go due to a lack of work.  Tr. 22, 291.  Plaintiff then collected unemployment benefits.  Tr. 22, 271.  While Plaintiff argues he had difficulty working in 2013, he offers no arguments as to the remainder of the ALJ's analysis regarding the inconsistencies between Plaintiff's work history and statements.  ECF No. 14 at 14.  As discussed above, the record demonstrates Plaintiff worked for several years after he alleged his hip worsened, he attended school and job hunted during the relevant adjudicative period, and he eventually returned to work.  Moreover, the record demonstrates that Plaintiff has given inconsistent statements regarding why he quit working and most of the reasons demonstrated in the record were unrelated to his impairments. These were clear and convincing reasons to reject Plaintiff's symptom reports.

Fourth, the ALJ found that Plaintiff's statements regarding disabling bipolar symptoms were inconsistent with his improvement with treatment. Tr. 22. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ reasoned Plaintiff demonstrated improvement with medication. Tr. 23 (citing Tr. 741, 744, 749-50, 757, 810, 1052). Plaintiff also had normal presentation at appointments throughout the record. Tr. 23 (citing Tr. 720, 741, 745, 750-51, 755, 757, 803, 824). When Plaintiff was stabilized on medication, his provider opined Plaintiff's bipolar disorder did not seem to be a limiting factor at that time, Tr. 24 (citing Tr. 1053), and on another occasion, Plaintiff's bipolar disorder was noted as controlled with Zyprexa, Tr. 24 (citing Tr. 1066).

Plaintiff argues that the ALJ cited only to a single note indicating Plaintiff's condition was not a limiting factor. ECF No. 14 at 16. However, as discussed *supra*, the ALJ cited to multiple pieces of evidence demonstrating Plaintiff's

improvement with treatment.  The ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

In sum, the ALJ gave clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's symptoms complaints.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

//

//

//

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED November 12, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE